## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL WILLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 1:17-cv-01402-JHE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION[1]

Plaintiff Michael Wills ("Wills") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits ("DIB").  (Doc. 1).  Wills timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

On July 15, 2014, Wills filed a Title II application for a period of disability and DIB, alleging disability beginning February 27, 2014.  (Tr. 146, 217-18).  The claim was denied initially on October 21, 2014.  (Tr. 158-63).  Thereafter, Wills filed a written request for hearing before an Administrative Law Judge ("ALJ") (tr. 157), and Wills appeared at a hearing by video on March

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 15).

10, 2016 (tr. 87). Wills was represented by an attorney. (Tr. 87, 164-65)

After the hearing, the ALJ found Wills not disabled and denied his claim on June 17, 2016. (Tr. 13-23). Wills sought review by the Appeals Council, but it declined his request on June 20, 2017. (Tr. 1-7). On that date, the ALJ's decision became the final decision of the Commissioner. On August 18, 2017, Wills initiated this action. (*See* doc. 1).

Wills was fifty-one at his alleged onset date and fifty-four at the time of the ALJ's decision. (Tr. 8, 217). Wills can read and write in English, has four or more years of college education, and has worked as a substance abuse counselor. (Tr. 112, 246, 248). Wills alleges disability due to lower back injury, nerve damage in the lower back with leg pain, urinary incontinence, depression, anxiety, post-traumatic stress disorder, and diabetes. (Tr. 247).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have

taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the

findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However,

the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches

to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d

528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the

ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis

has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143,

1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of

disability, a claimant must be disabled as defined by the Social Security Act and the Regulations

promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability

benefits, a claimant must provide evidence of a "physical or mental impairment" which "must

result from anatomical, physiological, or psychological abnormalities which can be shown by

medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is

disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed
        by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and
(5)     whether the claimant is capable of performing any work in the national
        economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Wills meets the insured status requirements of the Social Security Act through December 31, 2019, and that Wills had not engage in substantial gainful activity since February 27, 2014. (Tr. 13). At Step Two, the ALJ found Wills has the following severe impairments: lumbago with sciatica and unspecified side/lumbar disc displacement/lumbar degenerative disc disease. (*Id.*). At Step Three, the ALJ found Wills did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15).

Before proceeding to Step Four, the ALJ determined Wills' residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. §

404.1545(a)(1). The ALJ determined Wills had the RFC to perform light exertional work, explaining:

> The claimant can frequently use bilateral foot controls. He can occasionally climb ramps and stairs but never ropes or scaffolds. He can occasionally stoop, kneel, and crawl but never crouch. The claimant should never be exposed to unprotected heights, dangerous tools, dangerous machinery, or hazardous processes. He should never operate commercial motor vehicles. In addition to normal breaks, the claimant will be off task about five percent of a normal workday in nonconsecutive minutes. The claimant requires a sit/stand option with the retained ability to stay on or at his workstation in no less than thirty-minute increments each, without significant reduction of remaining on task. He can ambulate short distances of up to one hundred yards per instance on flat, hard surfaces.

(Tr. 16-21).

At Step Four, the ALJ determined Wills is capable of performing his past relevant work as a substance abuse counselor. (Tr. 21-23). Therefore, the ALJ determined Wills has not been under a disability and denied Wills' claim. (Tr. 23).

### V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Wills failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Wills challenges the Commissioner's decision on two specific grounds, contending: (1) the ALJ failed to properly assess the credibility of Wills' complaints of pain consistent with the Eleventh Circuit pain

standard; and (2) the ALJ failed to properly articulate good cause for according less weight to the opinions of Wills' treating physician. (Doc. 12 at 4-13). Neither of these grounds supports reversal.

**A. The ALJ Properly Evaluated Wills' Complaints of Pain Consistent with the Eleventh Circuit Pain Standard**

Wills contends that the ALJ did not properly assess his "credibility" or "credit his testimony" consistent with the Regulations when making his determination. Upon review of the ALJ's decision and underlying record, the ALJ properly applied the Eleventh Circuit Pain Standard consistent with the Regulations when determining Wills' RFC. (Tr. 16-21).

The Eleventh Circuit pain standard "applies when a disability claimant attempts to establish disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) ). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). If the ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002).

Once the issue becomes one of "credibility," the provisions of SSR 16-3p apply, which state:

[W]e recognize that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence. In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2016 WL 1119029, at *4. Additionally, "[w]hen evaluating a claimant's subjective symptoms, the ALJ must consider the following factors:

(i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief . . . of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'"

*Leiter v. Comm'r of SSA*, 377 Fed. Appx. 944, 947 (11th Cir. May 6, 2010) (quoting 20 C.F.R. § 404.1529(c)(3)).

Here, the ALJ stated that, after careful consideration of the evidence, he found that Wills' medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Wills' statements concerning intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 17).

Wills alleges severe, disabling back pain, with an alleged onset date of February 27, 2014. After a review of the medical record, the ALJ noted that his MRIs show little change in his degenerative disc disease from June 2012 (when he was working) to March 2014. (Tr. 19). The

ALJ further notes that although Wills' primary care physician Dr. Eltoum stated that Wills was unable to work beginning in June 2013,[4] Wills continued to work at the level of substantial gainful employment until February 2014. (Tr. 19-20). Dr. Samuel R. Bowen, II, a neurosurgeon, examined Wills in March 2014, and on May 5, 2014, reported that Wills could return to work at his previous level of exertion as of June 5, 2014 – a month later, but Wills applied for medical disability retirement instead. (Tr. 20). Wills stated in his function report that he used a medically prescribed back brace, but there is no evidence of a prescription and no report of such use at the consultative examination or at the hearing. (*Id.*). The ALJ next noted that Wills reported the use of a catheter and testified that he has incontinence, but the only reports of incontinence in his medical reports were in March and April 2014. (*Id.*). For these reasons, the ALJ recognized Wills had limitations due to his back impairment and other conditions, but found the medical evidence did not support a finding of disability. (*Id.*).

The record contains a June 2012 (prior to the alleged onset date of February 27, 2014) MRI of Wills' lumbar spine that shows spondylosis and other mild degenerative changes. (Tr. 17 & 308). There are no other medical records until April 10, 2013, when Wills saw Dr. Mahgoub A. Eltoum at Craddock Health Center. (Tr. 370-73). Dr. Eltoum noted that Wills was out of medication, his AIC level was 11.2%, and his type II diabetes mellitus was uncontrolled. (Tr. 18, 370-73). Dr. Eltoum noted Wills continued to have lower back pain, for which he took medication. (*Id.*). The record includes a Physician Report-Injury Follow-Up Work Status Form, dated April 10, 2013, on which Dr. Eltoum reported Wills was "not able to work . . . indefinitely" (tr. 18, 373). There is no corresponding injury treatment record. (*See* tr. 373).

_____

[4] Medical records indicate Dr. Eltoum opined Wills was unable to work indefinitely as early as April 10, 2013. (Tr. 373). The ALJ cites this opinion on page tr. 18 which continues to support the assertion that Wills continued to work after Dr. Eltoum opined he could not.

The next day, April 11, 2013, Wills returned to Craddock Health Center and reported having been "body slammed" by a student, landing on a concrete floor. (Tr. 367). Dr. Stephen Bowen examined Wills and completed a Physician Report-Injury Follow-Up Status Work Form, on which he indicated Wills was "able to return to work with no restrictions." (Tr. 368). Dr. Stephen Bowen also identified the problem as "whiplash" and "lower back strain" on the form. (*Id.*). On April 15, 2013, Wills saw Dr. Walter P. Pinson at Craddock Health Center, complaining of neck pain and headaches he had been experiencing since the incident. (Tr. 18, 365-66). A cervical x-ray was negative, and Dr. Pinson's notes state that he suspected a sprain. (*Id.*). Dr. Pinson also completed a Physician Report, on which he stated that Wills was "able to return to work with no restrictions." (Tr. 18, 366).

On April 24, 2013, Wills saw Dr. Eltoum again, who reported Wills was "not able to work . . . indefinitely;" however, Dr. Eltoum's only plan related to Wills' back pain was to continue with current management (medication) and to see him in three months. (Tr. 18, 362-64). Dr. Eltoum continued to provide similar reports on subsequent visits when Wills complained of back pain. (Tr. 350, 353, 354, 357, 361, 364, 373, 398, 404, 408, 417).

Additional post-injury examination notes from Craddock Health Center are consistent with continued complaints of low back pain, but there are few limitations (other than Dr. Eltoum's blanket work restriction). (Tr. 395-411). In March 2014, Wills reported a problem controlling his bladder, which had caused a couple of urinary accidents (tr. 351), but there is no further report of bladder control issues.

Additionally, in March 2014, Wills went to Birmingham Neurosurgery and Spine Group with complaints of low back pain and leg numbness. (Tr. 336-37). On March 12, 2014,

neurosurgeon Dr. Samuel R. Bowen[5] examined Wills and reported normal gait, normal posture, and no paraspinal muscle spasm. (Tr. 339). Dr. Bowen assessed normal strength in Wills' lower extremities. (*Id.*). Dr. Bowen instructed Wills to continue current work restrictions (tr. 340) pending a lumbar spine MRI (tr. 335). The March 2014 MRI showed a broad central disc bulge at L4-5 with some mild foraminal stenosis and degenerative disc disease at the L4-5 level. (Tr. 334).

On April 23, 2014, Wills saw Dr. Bowen again, reporting he was doing better, but still had pain in his lower back. (Tr. 330). The examination revealed normal posture, normal gait, a full range of motion in all extremities, and no weakness. (Tr. 332). Dr. Bowen assessed Wills as "improved" and opined that Wills could return to work on light duty with no lifting greater than twenty pounds and no prolonged bending for one month, then could return to his previous job restrictions from before the injury or "full duty." (Tr. 329, 333). Dr. Bowen further opined that he did not think Wills had any permanent injury related to the recent worsening lower back pain. (*Id.*). Dr. Bowen also recommended physical therapy and instructed Wills to follow up as needed. (*Id.*).

Wills saw Dr. Celtin Robertson in October 2014, for a consultative examination for the State agency. (Tr. 389-93). Dr. Robertson found Wills' gait was normal and that he was able to toe-heel walk and squat halfway, limited by lumbar pain. (*Id.*). Straight leg raises were negative for sciatica. (*Id.*). Dr. Robertson diagnosed lumbar disc displacement and lumbar degenerative disease, which are consistent with imaging. (*Id.*). Dr. Robertson provided a medical source statement in which he reported Wills had no limitations in sitting, standing, or walking, and he was able to lift twenty-five to fifty pounds. (*Id.*). Dr. Robertson also reported that Wills was not

---

[5] As noted in the text, Dr. Samuel R. Bowen is a neurosurgeon at Birmingham Neurosurgery and Spine Group PC. (Tr. 339). Dr. Bowen the neurosurgeon should not be confused with Dr. Stephen R. Bowen at Craddock Health Center PC. (Tr. 367-68).

able to climb ladders or work at unprotected heights. (*Id.*).

In addition to the medical evidence above, the ALJ considered Wills' work history when assessing the severity of his complaints. Notably Dr. Eltoum started to opine that Wills was not able to work as early as April 2013 (tr. 372-73); however, Wills reported that he continued to work until February 2014 (tr. 248). Wills' ability to work despite his condition suggests his condition was not as limiting as he alleged. *See e.g.*, *Vangile v. Comm'r Soc. Sec Admin.*, 695 F. App'x 510, 515 (11th Cir. 2017). Notably, both Dr. Bowen and Dr. Pinson opined in 2013 and 2014, that Wills could work without restrictions. (Tr. 366, 368). And, Dr. Bowen the neurosurgeon opined in April 2014 that Wills could return to work on light duty with no lifting greater than twenty pounds and no prolonged bending for one month, then could return to his previous job restrictions from before the injury or "full duty." (Tr. 329, 333). Rather than work, Wills applied for medical retirement from the state. (Tr. 221).

There is no doubt that the record shows that Wills experienced back pain for which he sought pain relief treatment. However, there is substantial evidence to support the ALJ's finding that the alleged symptoms were not as limiting as Wills alleged, and the ALJ clearly articulated his finding and provided substantial supporting evidence.

**B. The ALJ Properly Articulated Good Cause for According Less Weight to the Opinions of Wills' Treating Physician**

Wills contends the ALJ failed to properly articulate good cause for according less weight to the opinions of his treating physician Dr. Eltoum and for giving greater weight to Dr. Bowen (neurosurgeon) and Dr. Robertson's opinions. (Doc. 12 at 11-13). Upon review of the record, the ALJ properly articulated good cause for his decision to provide Dr. Eltoum's medical opinions partial weight, and there is substantial evidence to support the ALJ's decision to provide Dr.

Robertson and Dr. Bowen's opinions greater weight.

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. 20 C.F.R. §§ 404.1527(d), 416.927(d).

Furthermore, "good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at

1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

The ALJ did not err when he accorded partial weight to Dr. Eltoum's medical opinions. The ALJ correctly noted that Dr. Eltoum's statements that Wills was "not able to work indefinitely" were not medical opinions and, therefore, not entitled to any special significance or weight. (Tr. 20). *See* 20 C.F.R. §§ 404.1527(d)(3). Furthermore, as the ALJ noted, these statements and severe limitations are inconsistent with the fact that Wills continued to work through 2014 and are inconsistent with the medical record as a whole.

The ALJ provided good cause for according Dr. Eltoum's medical opinions only partial weight. The ALJ noted that such medical opinions, including restrictive physical limitations, were inconsistent with the record, specifically pointing to imaging and treatment records, and were vague/conclusory. (Tr. 20). *See* 20 C.F.R. § 404.1527(c)(3)-(4). MRI images of Wills' lumbar spine only showed mild degenerative changes. (TR. 308, 325). Examinations from April 2013 to October 2014 revealed Wills had normal gait, no spinal deformity, normal posture, no paraspinal muscle spasm, and full strength in his lower extremities. (Tr. 332, 338-39, 367, 391-91). Finally, four other physicians – Dr. Bowen (neurosurgeon), Dr. Bowen, Dr. Pinson, and Dr. Robertson – opined that Wills had either no work restrictions or could nearly do medium work." (Tr. 333, 365-66, 368, 393). Simply put, Dr. Eltoum's restrictive assessment is an outlier. To the extent Wills relies on his own complaints to bolster Dr. Eltoum's opinions, the ALJ properly discounted the severity of those complains (see above). This substantial evidence contradicts Dr. Eltoum's medical opinions and constitutes good cause for the ALJ to accord the opinions partial weight.

The record as a whole supports the opinions of Dr. Robertson and Dr. Bowen, and the ALJ

properly accorded their medical opinions greater weight. (Tr. 20). To the extent Dr. Robertson was a one-time examining physician, the ALJ noted this limited relationship and explained that Dr. Robertson provided an explanation for his opinion, which was consistent with the examination. (Tr. 20, 389-93). The ALJ further noted that he imposed additional physical limitations when assessing Wills' RFC that are more consistent with Wills' longitudinal treatment records. (Tr. 20). Finally, Dr. Bowen was a treating physician, specifically a neurosurgeon, and the ALJ notes that his opinion that Wills could return to work in May 2014, with no additional limitations was consistent with imaging and treatment records. (*Id.*).

Accordingly, the ALJ did not err when he accorded partial weight to Dr. Eltoum's medical opinions and stated that Dr. Eltoum's assertions that Wills was "unable to work indefinitely" were not entitled to any special significance based on him being a treating physician.

### VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Wills' claim for a period of disability and disability insurance benefits is **AFFIRMED**, and this action **DISMISSED WITH PREJUDICE.**

DONE this 14th day of March, 2019.

 

 

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE